Filed 12/12/13  P. v. Han CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARK HAN,<br><br>    Defendant and Appellant. | B244915<br><br>(Los Angeles County<br>Super. Ct. No. BA394577) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara R. Johnson, Judge.  Affirmed as modified.

Marissa McKinster Magilligan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Kimberley J. Baker-Guillemet, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Mark Han, appeals his conviction for assault with a semiautomatic firearm, carrying a loaded firearm in public, burglary, attempted criminal threats and negligent discharge of a firearm, with a firearm use enhancement (Pen. Code, §§ 245, [former] 12031 [now, 25850], 459, 664, 422, 246.3).[1] Han was sentenced to state prison for a term of seven years, eight months.

The judgment is affirmed as modified.

## BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

1. *Prosecution evidence.*

    a. *October 5 incident.*

In October 2011,[2] Jeannie Nam was living in an apartment complex. Her brother, Young Cho, lived in an apartment right next door and her son, Jason Nam, lived in an apartment on the second floor of the same building.

On the night of October 5, Jeannie was in her kitchen when defendant Han came into her apartment uninvited. He was dressed all in black and wearing black sunglasses. Jeannie did not initially recognize him, so she asked who he was. Han said, "I'm a devil." When Jeannie asked him to remove his sunglasses, Han said, "If I take my glasses off . . . anybody who sees my eyes needs to die." Han then pulled open his coat to reveal a gun in his waistband. Jeannie eventually recognized Han because he had once come to the apartment complex looking for her son Jason.

Han seemed to be drunk or high, and he was not making sense. At one point he said, "I am a killer." He threatened to kill Jeannie if she did not produce Jason, and he said "he would come back" if she failed. Then, with both arms extended and pointing the

---

[1]    All further references are to the Penal Code unless otherwise specified.

[2]    All further date references are to the year 2011 unless otherwise specified.

gun straight out in front of him, Han wandered through the apartment looking for Jason. At one point Han fired the gun, putting a hole in Jeannie's bed. She picked up the bullet because she thought it might be needed as evidence. Jeannie did not call the police after Han left. She told Jason what happened and he told her not to call the police until he figured out what to do.

b. *October 9 incident.*

Jason testified he and Han had been good friends for 10 years. About a week before October 9, Han called and said Jason owed him money.

On the morning of October 9, Han's friend Michael Castillo dropped Jason off at the apartment complex. Jason, who had been drinking all night and celebrating his birthday with Castillo, was intoxicated. As he walked toward his apartment, a car pulled up. Han jumped out with a gun in his hand and said, "Stop" and "I need to talk to you." Jason ran through the door of his apartment and tried to close it, but Han wedged the gun barrel between the door and the door frame. Realizing he would not be able to escape, Jason struggled for the gun and eventually wrestled it away from Han. This incident was witnessed by Castillo, by Jeannie's brother, and by Bridgette Burks, another neighbor. After Jason gained control of the gun, Han ran to his car and drove off.

When officers responded to the scene, Jason gave them Han's gun. The weapon was a semiautomatic handgun with 10 rounds in the magazine and one round in the chamber.

c. *Han's arrest.*

Later that same morning, Han returned to the apartment complex and spoke with Jason. Someone apparently called the police, who responded to the scene. The officers recognized Han from the suspect description they had been given earlier, so they detained him. Jason identified Han as the person who had pointed a gun at him earlier that day. Jeannie identified Han as the man who had fired a gun in her apartment on October 5.

When Han was pat-searched, officers did not find any weapons but they did recover a set of car keys. One officer noticed an illegally parked SUV nearby. Using Han's keys to open the door, the officer saw a shotgun on the front passenger seat with a jacket next to it. There were six rounds in the shotgun. Forensic analysis showed that a cartridge case and bullet recovered from the October 5 shooting at Jeannie's apartment had been fired from the same semiautomatic handgun Jason took away from Han on October 9.

2. *Defense evidence.*

Han testified that, on October 5, he had snorted opana (a drug similar to oxycontin), Xanax and rock cocaine. When he arrived at Jeannie's apartment, he was very intoxicated and feeling paranoid and irrational. He could not clearly remember everything that happened. He had gone to the apartment complex looking for Jason because he wanted to talk about a disagreement they had a few days earlier. After knocking on Jason's apartment door for five minutes, Han went downstairs to Jeannie's apartment. He recalled asking for Jason's whereabouts, but he did not remember threatening Jeannie or walking around her apartment pointing a gun. He had the gun with him that day because he "just wasn't thinking straight" and, during one of their phone calls, Jason had said: "I have a .45 for your ass." Han testified he did not purposely show the gun to Jeannie, and that it subsequently went off accidentally.

On October 8, Han tried to explain to Jason what had happened at Jeannie's apartment, but Jason hung up on him. The next day, Han returned to the apartment complex in his employer's Toyota because he still wanted to explain things to Jason. At the time, he was under the influence of oxycontin, Xanax and rock cocaine. He brought the semiautomatic handgun with him just in case Jason pulled a weapon on him. Han exited the car with the gun in his hand. He and Jason started yelling at each other and then Jason began running. Han ran after him and tried to give Jason the gun as a peace offering. He didn't mean to point the gun at Jason and he had no intention of shooting him.

4

Han drove to his parents' house, where he exchanged the Toyota for his father's Ford SUV.  From there he drove to his own house, picked up the loaded shotgun, put it in the SUV and covered it with a jacket.  He then drove back to the apartment complex because he wanted to give Jason the shotgun as a peace offering.  He spoke to Jeannie on the front porch, apologized for shooting his gun in her apartment, and offered to pay for repairs.  Jason and Cho came outside.  Cho was upset and tried to hit Han, so Jason and Han walked across the street to calm down the situation.  Han opened the door of his truck and showed Jason the shotgun.  Jason and Han spoke for a time and resolved their misunderstanding.  The police arrived while they were still talking.  Jason told Han to lie and tell the police someone had assaulted Jason, and that Han had brought the gun so Jason could protect himself.

## CONTENTIONS

1.  The trial court erred by admitting evidence about the shotgun.
2.  The abstract of judgment contains a clerical error.

## DISCUSSION

1.  *Evidence of the shotgun was properly admitted.*

Han contends the trial court erred by admitting evidence about the loaded shotgun because it was irrelevant and prejudicial.  He argues the shotgun was irrelevant because it had not been used during the commission of any of the charged offenses, and that it was prejudicial because it tended to show Han was the sort of person who surrounded himself with guns.  This claim is meritless.

a.  *Background*.

At trial, Han moved to exclude evidence of the shotgun on the ground it was highly prejudicial and unrelated to any of the alleged crimes.  The prosecution argued the shotgun was relevant to prove Han's intent to assault Jason, and to show his consciousness of guilt because Han initially told officers he had no connection to the SUV.

The trial court concluded the shotgun was relevant to show Han intended to assault Jason earlier on October 9, and to show he actually intended to threaten Jeannie and/or Jason on October 5. The trial court reasoned that Han's "bringing the gun the second time indicates the seriousness and non-jokingness of his intentions."

　　b. *Discussion*.

In *People v. Riser* (1956) 47 Cal.2d 566, disapproved on other grounds by *People v. Chapman* (1959) 52 Cal.2d 95, 98, our Supreme Court said: "When the specific type of weapon used to commit a homicide is not known, it may be permissible to admit into evidence weapons found in the defendant's possession some time after the crime that could have been the weapons employed. . . . When the prosecution relies, however, on a specific type of weapon, it is error to admit evidence that other weapons were found in [the defendant's] possession, for such evidence tends to show, not that he committed the crime, but only that he is the sort of person who carries deadly weapons." (*People v. Riser, supra,* at p. 577.)

However, the Supreme Court has subsequently broadened *Riser*, holding that even where it is clear the weapon at issue was not the one used in the charged crime, there are still some situations in which the unrelated weapon might be relevant and admissible. (See, e.g., *People v. Smith* (2003) 30 Cal.4th 581, 613-614 [evidence defendant possessed gun unrelated to murder was properly admitted because it contradicted accidental shooting defense]; *People v. Neely* (1993) 6 Cal.4th 877, 896 [evidence defendant possessed gun and ammunition unrelated to murder was properly admitted, apparently to prove intent, because these items were found in defendant's truck at home invasion crime scene].) As *Smith* explained: "This evidence did not merely show that defendant was the sort of person who carries deadly weapons, but it was relevant to his state of mind when he shot [the victim]. In his confession and opening statement to the jury, defendant claimed the shooting was an accident and he did not intend to kill [the victim]. In his later testimony, he said he took the gun to intimidate but not to shoot, and he chose the murder weapon because it was small and easy to conceal. Evidence that he possessed another small, easily concealed but unloaded gun and no ammunition that fit it, and that

6

he chose instead to take a loaded gun, was relevant to defendant's credibility on this point. An unloaded gun fully serves to intimidate; a loaded gun is necessary only to actually shoot. Thus, although the ammunition and derringer were not used in the killing, '[t]heir circumstantial relevancy . . . seems clear,' and they were, accordingly, properly admitted. [Citations.]" (*People v. Smith, supra,* at pp. 613-614, fn. omitted.)

Similarly, the loaded shotgun here tended to demonstrate Han's intent to carry out violent acts. Hence, it was relevant to disprove Han's testimony he had only been joking with Jeannie when he came to her apartment, brandished a handgun and issued threats against her and Jason. Furthermore, the fact Han returned to the apartment complex on October 9, just hours after assaulting Jason with the semiautomatic handgun, but now driving a different vehicle which had a loaded shotgun hidden inside, was relevant to disprove Han's testimony he had not intended to harm Jason with the handgun but meant it only as a peace offering.

The trial court did not err by admitting evidence of the shotgun.

2. *Abstract of judgment must be corrected.*

Han contends the abstract of judgment contains a clerical error because it incorrectly reflects a conviction for shooting at an inhabited dwelling when he had only been convicted for negligent discharge of a firearm (§ 246.3). The Attorney General agrees this clerical error should be corrected. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [it is proper and important to correct errors and omissions in abstracts of judgment].)

We will, therefore, direct the trial court to correct the abstract of judgment to accurately reflect this conviction.

## DISPOSITION

The judgment is affirmed as modified.  The trial court is directed to forward an amended abstract of judgment to the Department of Corrections and Rehabilitation correcting the error cited herein.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:


KITCHING, J.


ALDRICH, J.