Filed 3/26/14  In re J.M. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re J.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>J.M.,<br><br>        Defendant and Appellant. | A138721<br><br>(Contra Costa County Super. Ct. No. J13-00365) |

Appellant J.M. appeals from a judgment sustaining the allegations of a Welfare and Institutions Code section 602 wardship petition that he and two other minors committed second degree robbery.  He contends the judgment is not supported by substantial evidence.  We disagree, and affirm the judgment.

## I.  BACKGROUND

A wardship petition alleged appellant, age 17, and two minor cohorts, J.W. and S.S., committed second degree robbery.  (Pen. Code, §§ 211, 212.5, subd. (c).)

**A.  *Prosecution Case***

About 10:10 p.m. on March 21, 2013, Kelly Kennedy was walking home from his work as an assistant manager at the Antioch O'Reilly Auto Parts store.  Kennedy was on G Street and the area was "fairly dark," although a streetlight across the street provided some illumination.  Kennedy, who is six feet tall, wore a backpack that contained his O'Reilly Auto Parts work shirt.  He had a cell phone and an asthma inhaler in his pocket.

Kennedy testified a "black to dark gray" 2008 to 2011 Dodge Charger with dark tinted windows and a "pin stripe" drove up next to him.[1]  Instead of license plates, the car had a paper plate on the rear.  As the car pulled over, the vehicle lights went off and an individual in the right rear passenger seat, later identified as Hassan Beal, attempted to exit the vehicle before it stopped and "almost fell out" of the Charger before it came to a stop, and was almost run over.

When Kennedy stopped to help Beal, "two other people came and they rushed on me, grabbed me, one under each arm, lifted me backwards and threw me into the bushes."  He testified, "[S]everal individuals came out [of the vehicle], lifted me up backwards, threw me into a bush, pushed a gun in my face and proceeded to search my pockets and remove my backpack from me."  The two robbers were within inches of Kennedy's face as they searched his pockets and removed his backpack.

At the hearing, Kennedy identified appellant and S.S. as the two boys who threw him into the bushes and searched his pockets.  Kennedy was one "[h]undred percent" certain of his identifications.  Kennedy had already identified Beal in superior court as the robber with dreadlocks who held him down by kneeling on his chest.  Kennedy said there were four robbers outside of the car who committed the robbery.  Kennedy did not see a fifth person who remained in the car and pressed on the brake lights.  The four robbers who Kennedy saw wore dark jeans, baseball caps, and black hoodies, with the hoods pulled up.  One of them also wore a red shirt that was "pulled out" of the waistline of his baggy pants.  Except for Beal, the other robbers were of similar height and stature.

The robbers repeatedly said to Kennedy, "We want your money."  They ordered him to "[g]ive me your stuff" and "[g]ive me your bag."  They also told him to "[b]e quiet."  They searched Kennedy, checked his pockets, and pulled his backpack off.  Kennedy tried to resist by waiving his arms back and forth.  As he waived his arms, however, Kennedy hit a handgun that was next to his face.

---

[1] Kennedy testified his 25 years of work experience in the automotive industry enabled him to identify the vehicle.

Kennedy realized that "a very large gun [was] being shoved directly in [his] right cheekbone." The gun was pressed against his face throughout the robbery. The gun felt like plastic, but it "had a large clip on the bottom." Kennedy believed that he was "going to die." Kennedy got "a very good look at" the gun. He identified the gun admitted in evidence as the same gun that was pressed against his face during the robbery. Photographs of the gun were admitted in evidence.

Kennedy said that the robbers took his backpack and got back into the Charger at the same time. None of the robbers had separately returned to the car while the robbery was in progress. Kennedy noticed the car's license plate was paper while he was still on the ground and the robbers were getting back into the vehicle.

As Kennedy stood up, he saw a man who lived at White Haven Court, later identified as Daniel Sweitzer, coming to his aid. Sweitzer had already dialed 911. Sweitzer handed Kennedy his cell phone so that Kennedy could speak to the 911 operator. During the 911 call, Kennedy said there were four robbers and one other person was in the car, but in another portion of the tape said there were four people involved and one of the four was in the car.

During cross-examination, Kennedy did not identify appellant in court as the robber holding the gun. Kennedy acknowledged that his memory of the robbery was better on the night of the in-field identification than at the hearing. About two weeks after the robbery, Kennedy was called by appellant's defense investigator, Greg Risby. Kennedy acknowledged he may have told Risby the robber holding the gun had dreadlocks.

Antioch Police Officer Gary Lowther testified that about 10:48 p.m. he arrived at White Haven Court in response to Kennedy's 911 call. Kennedy looked "scared" and "shaken." He told Officer Lowther that he had been robbed at gunpoint by a group he described as "black males between the ages of 18 and 25 years old, wearing black hooded sweat shirts, standing anywhere between 5-foot-6 to 6 feet tall." Kennedy said the first robber to exit the car was "heavyset with dreadlock style hair." The three other robbers were "slender." He told Lowther the robbers took his backpack containing his O'Reilly

3

Auto Parts uniform shirt. Kennedy described the robbers' black 2008 to 2010 Dodge Charger with "white dealer paper plates on the back bumper." Officer Lowther broadcast those vehicle and suspect descriptions over the police radio. Officer Lowther testified on cross-examination that Kennedy told him Beal was the person who tackled him and got him to the ground. According to Lowther, Kennedy did not mention there were any other persons helping Beal bring him to the ground.

Within about 10 minutes of his broadcast, Officer Lowther was advised that the Charger had been stopped and the occupants detained. The five detainees were appellant, Beal, J.W., S.S., and Stephan Wohlford. Appellant was sitting in the front passenger seat. The car and five detainees were photographed at the scene and the photographs were admitted in evidence.

Before the Charger was stopped, but while it was being followed by a police car, the occupants threw Kennedy's backpack and work shirt out of the car. Officers found those items on the side of the road and brought them to Kennedy for identification.

About 11:00 p.m., Antioch Police Officer Ted Chang responded to the dispatch report of the robbery which referred to the suspects' "black Dodge Charger." Officer Chang took part in an inventory search of the car after it was located and stopped by another officer. As he approached the car's front passenger compartment, Officer Chang "immediately saw what appeared to be a firearm in the front passenger floorboard and it was actually pointing upwards so it really caught my eye." The gun "appeared real, it appeared loaded," so Officer Chang "rendered it safe" by removing the "Glock 9-millimeter magazine," which contained 40-millimeter rounds of "live ammunition." Although the clip was loaded with real bullets, the gun found in the Charger was "a replica pellet gun" that could not "feed ammunition into the chamber." Photographs of the gun were admitted in evidence.

Officer Lowther drove Kennedy to view some "[p]ossible suspects" who had been detained about three-quarters of a mile from the scene of the robbery. Before they arrived, Officer Lowther read Kennedy the printed "in-field showup admonition." The

4

street was brightly illuminated by streetlights and the headlights and spotlights on the patrol cars.

Kennedy viewed the detainees one by one. Beal was the first person shown to Kennedy. Kennedy told Officer Lowther that Beal was the "first guy that . . . fell out of the car, when the car pulled up next to me [Kennedy]." Appellant was the second person shown to Kennedy. According to Officer Lowther, Kennedy stated without any hesitation, "That's the guy that had the gun." However, when testifying at the hearing, Kennedy did not recall positively identifying which of the four robbers held the gun to his face, and could not make an identification at the hearing. At the showup, Kennedy identified S.S., who was appellant's cousin, and J.W. as the "guys that came out of the car, surrounded me and took my property." Kennedy identified Stephan Wohlford from a prior contact with him at O'Reilly Auto Parts, but not as being actively involved in the robbery.

In court, Officer Lowther identified the suspects photographed at the in-field showup and the photographs were admitted in evidence. The photographs of appellant, S.S., and J.W. showed slim youths wearing baseball caps. S.S. and J.W. also wore baggy pants with boxer shorts sticking out. By contrast, Wohlford looked older, had a shaved head, and was big and tall.

Officer Lowther booked appellant into jail, read him the *Miranda*[2] advisement, and appellant declined to discuss the incident. However, after the minors were transferred to juvenile hall, S.S. and appellant waived their *Miranda* rights and spoke to Detective Robert Meads. S.S. said he was the driver that night, but denied being aware that his friends committed a robbery. Appellant also denied participating in the robbery. He said that he and four friends were in the car going to buy marijuana. He said that everyone but S.S. was drunk. Appellant acknowledged that he got out of the car when it stopped, but he claimed that he returned to the front passenger seat of the car when he saw the robbery commence. When his friends reentered the car, they had a backpack.

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

When the three boys in the back seat finished searching the backpack, they handed it to appellant. Appellant looked in the backpack, but returned it to the back seat when he saw that it was empty. Appellant and S.S. acknowledged "play[ing] with the gun two to three weeks prior to the night of [their] arrest." After the robbery, Beal told appellant to take the gun and "run with it" if they were stopped by the police. When appellant declined to do so, Beal threw the gun onto the front floorboard. However, appellant had previously told the police he had no idea how the gun ended up under his seat. Appellant's tape-recorded statement was played at the hearing.

**B.** *Defense Case*

Daniel Sweitzer testified he "caught the very last glimpse" of the robbery. He was inside his garage with the side garage door open, about 30 to 35 feet away from the scene of the robbery. Sweitzer looked though the small "notch hole" in the fence surrounding his property and saw three men robbing a man later identified as Kennedy. One of the robbers had dreadlocks and was holding a weapon. Another robber was wearing red boxer shorts that were visible above his low-sagging dark pants. A third robber was holding a bag and jumped into the rear passenger side of a black car. Sweitzer identified three of the robbers, J.W., S.S., and Beal, at an in-field showup a few blocks from his home. He did not identify appellant.

**C.** *Findings and Disposition*

The juvenile court sustained the robbery allegation against all three minors. The court declared appellant a ward of the court and ordered him placed at a juvenile facility for the maximum term of confinement of five years, with credit for 50 days time served. Appellant timely filed a notice of appeal.

## II. DISCUSSION

Appellant contends the complaining witness's varying descriptions of his role in the robbery could not constitute substantial evidence to support the allegation sustained against him. We are not persuaded.

Appellant first contends Kennedy was inconsistent about the number of active robbers. At the jurisdictional hearing, Kennedy testified four people robbed him and a

6

fifth remained in the car. According to Officer Lowther, the first officer to arrive at the scene, Kennedy told him four people had attacked him and he believed someone else was in the vehicle. On the 911 tape played at the hearing, Kennedy is heard at one point stating four people had attacked him, and at another point stating three people had attacked him and a fourth remained in the car. At the in-field showup, Kennedy identified four active participants, including appellant. On this record, Kennedy's one inconsistent expression on the 911 tape, moments after he had just been robbed at gunpoint, hardly seems significant.

Appellant points to other conflicts. Kennedy testified two other people from the Dodge lifted him and threw him in the bushes when he stopped to help Beal, but Officer Lowther testified Kennedy identified Beal alone as the person who tackled him and brought him to the ground. At the hearing, Kennedy identified appellant and S.S. as the persons who lifted him up, threw him backwards into the bushes, and went through his pockets. When he testified, Kennedy was "pretty positive" appellant was not the person who had the gun, but according to Officer Lowther, Kennedy unhesitatingly identified appellant as that person on the night of the robbery.

Like many victim eyewitnesses to a stressful event, some of Kennedy's descriptions during his testimony were not fully consistent with his prior statements to police or with what another eyewitness glimpsed through a small hole in a fence from 30 feet away. Kennedy was nonetheless completely consistent that appellant was a major participant in the robbery, whether he held the gun or went through Kennedy's pockets. Kennedy's testimony was also corroborated by numerous circumstances. He found his cell phone in the bushes when he went back the following morning, consistent with his testimony he was thrown into the bushes; the gun found on the front passenger floorboard was a replica pellet gun with a magazine, consistent with his description that the gun felt like plastic next to his face and had a large clip on the bottom; and appellant was sitting in the front passenger seat where the pellet gun was located following the detention, consistent with Kennedy's showup identification that appellant was the one with the gun.

Further, appellant was stopped in a vehicle matching the description provided by Kennedy within a short distance from the scene of the robbery. Kennedy's backpack and shirt were found nearby. Appellant admitted to police every essential fact short of confessing to the robbery. He admitted being with his four friends in the car when it stopped next to Kennedy, admitted a robbery took place, admitted he was seated in the front passenger seat in close proximity to where the pellet gun was found, admitted he got out of the car when the robbery took place, and admitted the victim's backpack ended up in the car.

Based on Kennedy's testimony and all of the corroborating circumstances, the court obviously found Kennedy to be a credible witness. Mere conflicts in the evidence do not establish the evidence was insufficient to support the judgment. (*People v. Hinton* (2006) 37 Cal.4th 839, 885.) Here, appellant pointed out the claimed discrepancies to the trial court in a motion to dismiss, and the trial court rejected those arguments. The credibility of witnesses is for the determination of the trier of fact. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) Even the uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable. (*People v. Scott* (1978) 21 Cal.3d 284, 296.) We cannot say as a matter of law that there was insufficient evidence to support the court's decision in this case.

## III. DISPOSITION

The judgment is affirmed.

_____
Margulies, Acting P.J.

We concur:

_____
Dondero, J.

_____
Banke, J.

A138721
*In re J.M.*

9