Filed 1/27/15  P. v. Ray CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B247116 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA403890) |
| v. | |
| RICHARD DELVONE RAY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Clifford L. Klein, Judge.  Affirmed.

Meredith J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Richard Delvone Ray appeals from the judgment entered following his conviction by jury of corporal injury upon a cohabitant, with personal infliction of great bodily injury under circumstances involving domestic violence, and with an admission he suffered within the last seven years a prior conviction for corporal injury upon a cohabitant (Pen. Code, §§ 273.5, subds. (a) & (e)(1), 12022.7, subd. (e)). The court sentenced appellant to prison for seven years. We affirm.

### FACTUAL SUMMARY

1. *People's Evidence.*

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established that on October 19, 2012, Corrine D. (Corrine) lived with appellant in an apartment in Los Angeles County. They had been in a relationship about four months.

About 1:30 p.m., Corrine and appellant were in the apartment and arguing about a miscarriage Corrine had suffered. Corrine learned appellant had told others about the miscarriage. She entered the room where appellant was and told him not to tell anyone else about the miscarriage. Appellant became very angry and told her he would talk to his friends and Corrine could not shut them out. Corrine entered the bathroom and slammed its door shut. She knew appellant had been drinking.

Immediately after Corrine shut the bathroom door, appellant began yelling and attempting to open it, but Corrine was trying to keep it shut. Appellant pushed the door open, entered the bathroom, and, standing close to Corrine, yelled at her. Corrine pushed him out of the bathroom and the two pushed each other. Appellant punched her lower stomach about 10 to 15 times, stopped, then punched her there again about 10 to 15 times. Corrine slapped appellant's face. Appellant, using his right fist, hit her on her left jaw, nearly knocking her unconscious. Corrine fell to the floor and began spitting blood. Appellant continued yelling, "You can't shut me out."

Corrine called 911. She told the dispatcher that she needed an ambulance because her boyfriend struck her jaw and might have broken it, she was bleeding, and it felt like her jaw was split. A recording of the call was admitted into evidence and played for the jury and, during the call, appellant could be heard apologizing for what had happened.

About 2:00 p.m., Los Angeles Police Officer Michael Kim and his partner went to Corrine's apartment following a call about an "ambulance, battery." Kim saw Corrine, fearful and crying, holding her jaw. Kim also saw dried blood on Corrine's lips. Corrine mumbled to Kim that she was unable to "open her jaw." Kim saw blood on the sink and floor of the apartment's bathroom. He took a photograph of that blood (and the photograph was admitted into evidence). Kim's partner, using Corrine's phone, texted appellant, asking him to return to the apartment, but appellant did not. Kim's partner contacted a judge and within minutes obtained an emergency protective order for Corrine. Corrine later went to the hospital, experiencing excruciating pain. Dr. Young Jun, a surgeon, testified he treated Corrine on October 23, 2012. Jun determined Corrine's right mandible was fractured. Jun surgically repaired the fracture using two plates and eight screws.

2. *Defense Evidence.*

In defense, appellant testified as follows. After Corrine's miscarriage, she experienced intense mood swings and became irrational and antagonistic towards appellant. On October 19, 2012, appellant texted a female friend about the miscarriage. Appellant told Corrine in the bathroom that he had done so, and Corrine replied, "Why does it matter if she's pretty." Appellant returned to his room. Corrine exited the bathroom and, upset, entered appellant's room and said she had told him not to tell anyone about the miscarriage. Corrine returned to the bathroom and closed its door.

Appellant believed Corrine was having a mood swing. He went to the bathroom door, opened it, and saw Corrine standing at the sink. Corrine "charged the bathroom door" and appellant "stepped into the door" to keep it from slamming into his foot. Appellant told Corrine, "You can't just shut me out. I can talk to my closest friends about the miscarriage."

3

Appellant was pinned by the door. He punched Corrine's hip five or six times to free himself. Once he was free from the door, appellant delivered additional blows to Corrine that were not powerful and he did not need to hit her as hard as he previously had hit her. Appellant testified each time he hit her, "it was softer and softer. It became basically a wet noodle punch." Appellant continued explaining to Corrine he could talk with his friends. Corrine, using her open palm, hit the left side of his face very hard. Appellant reflexively and defensively hit her back. Corrine fell and spit blood.

We will present below additional testimony by appellant.

## ISSUE

Appellant claims the prosecutor committed misconduct by cross-examining appellant about the particulars of his prior misdemeanor offense.

## DISCUSSION

*No Prosecutorial Misconduct Occurred.*

1. *Pertinent Facts.*

During the People's case-in-chief, outside the presence of the jury, the prosecutor represented appellant had suffered a prior conviction for "misdemeanor 243." During later discussions concerning the admissibility of evidence of the prior offense, the court noted, inter alia, spousal battery was a crime of moral turpitude and appellant suffered the conviction in 2007.[1] The court analyzed the probative value of the evidence and its prejudicial effect, essentially engaging in Evidence Code section 352 analysis although the court did not expressly refer to that section.

---

[1] The prosecutor, as mentioned, referred to appellant's 2007 offense as a "Misdemeanor 243" but, after the trial for the substantive offense, appellant admitted he suffered a 2007 conviction was for corporal injury upon a spouse (Pen. Code, § 273.5, subd. (a)), and the record reflects this was the offense to which the prosecutor was referring.

4

The prosecutor commented she wanted to ask appellant about the "conduct" and, depending upon appellant's answer, the prosecutor would proffer certified documentary evidence of the prior conviction. The prosecutor later indicated she intended to ask appellant whether he had committed a "domestic battery against Sarah, his girlfriend, in 2007." The court told the prosecutor she was, by that question, "getting into facts when you're talking about Sarah." The prosecutor then indicated she would ask whether appellant committed a "domestic battery in 2007."

The court indicated it did not know how much more sanitizing the prosecutor could do, considering that the prior offense was similar to the present one. Appellant's counsel indicated he preferred the phrase "battery on his girlfriend," a phrase the court and prosecutor then indicated was acceptable. The court then stated, "Battery on a girlfriend. So we're not phrasing it identically to this case, but it's close." The prosecutor indicated if appellant did not deny he committed battery on a girlfriend, the prosecutor would ask no further questions on the issue, but if appellant denied he committed that offense, "that opens it up."

Later, during the defense case, appellant testified during direct examination, "usually the police don't deal with situations like this immediately fair." (*Sic*.) During cross-examination, appellant acknowledged testifying that usually police "don't deal with this fairly." The prosecutor asked whether appellant was referring to domestic violence situations. Appellant replied that, more times than not, there was "somewhat of . . . a folklore, as far as a man doesn't hit a woman."

The prosecutor asked what appellant meant by folklore, and appellant replied it was grossly frowned upon, it was not something that should be done, and "a man should always use restraint . . . in every situation." The prosecutor asked whether appellant disagreed with that, and appellant replied, "I feel using restraint and being [nonviolent] is ideal, . . . in life. I'm very about [*sic*] that. As far as defending yourself, it depends on the situation. So I guess I would say no."

The following then occurred without objection during the prosecutor's cross-examination of appellant (and we italicize below the three questions appellant challenges

5

as prosecutorial misconduct): "Q. In 2007, you committed battery against a girlfriend; correct? [¶] A. Yes. Yes. [¶] Q. *And in that case, you were not able to use restraint; correct?* [¶] A. She had been hitting me what I felt unnecessarily. I wasn't physically threatening her repeatedly. I just let it happen as long as I could before I fought back. I felt like she was actually going to injure me, because she was not stopping. [¶] Q. *That was Sarah; right?* [¶] A. Yes. [¶] Q. *And to defend yourself, you punched her in the face; right?* [¶] A. That's what I did."

Later, outside the presence of the jury, the court indicated the prosecutor had elicited unanticipated testimony because the prosecutor's questions about the prior offense went beyond the question of whether appellant had been convicted of the prior offense. The court observed this raised the issue of whether the court was required to give an instruction pertaining to domestic violence evidence under Evidence Code section 1109.

The prosecutor apologized and stated, "I wasn't intending to do that until the defendant opened the door and talked about the facts, and then I had to." The court stated, "I'm not getting into that," and that it was concerned about the jury instruction issue. The court indicated the prosecutor might argue to the jury that appellant's answers were evidence of prior conduct that was either domestic violence evidence or evidence of intent. The prosecutor stated, "I won't argue that." The court commented it was not saying the prosecutor could not, or should not, argue that, but the court wanted to instruct the jury properly.

Appellant's counsel, focusing on the prosecutor's questioning, expressed uncertainty as to whether that questioning "trigger[ed] the 1109 instruction," and appellant indicated the prosecutor's questioning seemed to pertain to impeachment. The court commented it normally would have interrupted the prosecutor's questioning and instructed the jury "this is limited to moral turpitude" (i.e., as impeachment), but "when it came out, I just wasn't sure where we were going with this." The court ruled it would not give an instruction pertaining to Evidence Code section 1109. The court later added it was not "finding fault."

6

2. *Analysis.*

Appellant claims the prosecutor committed misconduct by asking the three previously italicized questions after the prosecutor asked appellant, "In 2007, you committed battery against a girlfriend; correct?" Appellant argues the three challenged questions were misconduct because (1) the trial court told the prosecutor not to ask additional questions on the issue unless appellant "opened the door" by denying on cross-examination he committed the prior offense, (2) appellant did not deny he committed the prior offense, and (3) the resulting additional factual testimony the prosecutor elicited from appellant presented the 2007 offense as so factually similar to the present one the result was the admission of propensity evidence. Appellant asserts the additional factual testimony "includ[ed] that appellant felt he was acting in self defense, and that he had hit his girlfriend, Sarah, in the face."

Appellant argues the prosecutorial misconduct was prejudicial because the prosecutor said she would not argue to the jury the evidence was propensity evidence; therefore, the additional factual testimony was irrelevant and unduly prejudicial under Evidence Code section 352. Appellant further argues the additional factual testimony was evidence of appellant's bad character; therefore, the admission of that testimony violated his right to due process.

First, we conclude appellant's claim is unavailing. As to all three challenged questions, appellant failed to object on the ground of prosecutorial misconduct and failed to request a jury admonition with respect to the alleged prosecutorial misconduct, and a jury admonition would have cured any harm. Appellant waived the issue of whether any of the three questions constituted prosecutorial misconduct. (*Cf. People v. Gionis* (1995) 9 Cal.4th 1196, 1215; *People v. Mincey* (1992) 2 Cal.4th 408, 471.)

Even if appellant did not waive the issue of prosecutorial misconduct, we reject his claim on the merits. A prosecutor violates the Fourteenth Amendment by committing conduct that infects the trial with unfairness to the degree that due process, the defendant's right to a fair trial, is denied. A prosecutor's misconduct that does not render a trial fundamentally unfair may violate state law if it uses deceptive or reprehensible

7

methods to attempt to persuade the court or jury. (*People v. Hill* (1998) 17 Cal.4th 800, 819 (*Hill*).)

Appellant did not pose propensity evidence or Evidence Code section 352 objections to any of the three questions. Yet he argues here the prosecutor committed misconduct by eliciting propensity evidence, and the misconduct was prejudicial because the propensity evidence was excludable under Evidence Code section 352.

The first of the three challenged questions was, "And in that case, you were not able to use restraint; correct?" Fairly read, the record reflects the court sanitized the prosecutor's proffer concerning the prior offense, the prosecutor effectively told the court that if appellant did not deny he committed the prior offense of battery on a girlfriend, the prosecutor would ask no subsequent questions about appellant's prior offense but, if appellant denied it, that would "open[] . . . up" appellant to impeachment by certified documentary evidence of appellant's conviction.

However, the court's sanitizing of the prosecutor's proffer, and the prosecutor's statement about when appellant would be open to impeachment, occurred during the People's case-in-chief. It was later, during the prosecutor's cross-examination of appellant, that he testified, inter alia, "[a] man should always use restraint . . . in every situation" and appellant felt "using restraint and being [nonviolent] is ideal, . . . in life." In other words, appellant's above quoted cross-examination testimony about *restraint and nonviolence* was a *new* development.

Appellant's testimony about restraint and nonviolence was relevant to whether he used restraint and nonviolence in the present case. (Evid. Code, § 210.) Moreover, *his testimony about restraint and nonviolence* was subject to impeachment. This is true despite the fact that, after appellant testified about restraint and nonviolence, he testified he committed the 2007 offense of "battery against a girlfriend," and, by that testimony, precluded *impeachment of his credibility generally* by introduction of documentary evidence of the 2007 conviction.

8

The prosecutor sought to impeach appellant's testimony about restraint and nonviolence by asking the first of the three questions, i.e., "And in that case [i.e., the 2007 case], you were not able to use restraint; correct?" This question did not call for additional factual testimony about the 2007 offense. Appellant could have answered the question yes or no. If he had answered yes, that answer would have impeached him (perhaps collaterally) by showing he had not always used restraint and nonviolence in the past.

However, appellant, by answering yes, would not have presented *additional* factual testimony, because it was self-evident from appellant's previous admission he committed the 2007 offense of "battery against a girlfriend" that appellant was unable to use restraint in that case. The first of the three questions did not seek to elicit additional factual testimony that risked the jury treating the 2007 offense as propensity evidence.

Instead of answering the first question yes or no, *appellant* elected to give an *unnecessarily expansive answer* that presented additional factual testimony about the 2007 offense. However, the prosecutor's first challenged question did not seek that testimony.

The prosecutor's second challenged question was, "That was Sarah; right?" That question followed appellant's unnecessarily expansive answer to the prosecutor's first question. Moreover, that unnecessarily expansive answer created ambiguity. The unnecessary factual detail of that answer, the similarity of the facts of the 2007 and present offenses, and appellant's failure in his answer to make clear he was testifying about the 2007 offense, created ambiguity as to whether he was testifying about the 2007 offense or the present one.

In other words, the prosecutor's second question reasonably may be understood as the prosecutor attempting to *clarify* who *appellant* was referring to—Sarah or Corrine—in appellant's unnecessarily expansive answer. Reasonably understood, the second question was not a prosecutorial effort to elicit additional factual testimony after the trial court had sanitized the prosecutor's proffer by suggesting the prosecutor not refer to Sarah by name. Moreover, the jury already had heard appellant's testimony the 2007

9

offense involved him battering a female. The second of the three questions did not seek to elicit additional factual testimony that risked the jury treating the 2007 offense as propensity evidence.

As discussed below, the prosecutor indicated she would not present jury argument on the issue of domestic violence evidence, but that does control whether that evidence was admissible. In particular, the third challenged question was, "And to defend yourself, you punched her in the face; right?" Here, the prosecutor elicited additional facts about the 2007 offense, i.e., during the 2007 offense, appellant was allegedly defending himself when he punched a girlfriend in the face. The facts appellant *punched* the girlfriend, allegedly did so *in self-defense*, and punched her in the *face* constituted additional factual testimony. Moreover, those facts were the same as the facts in the present case. Appellant therefore maintains those facts were additional factual testimony constituting propensity evidence.

We assume the additional factual testimony concerning the 2007 offense that appellant punched the girlfriend in the face in self-defense was propensity evidence. However, under Evidence Code section 1109, subdivision (a)(1), domestic violence evidence is not made inadmissible by Evidence Code section 1101.

The court's earlier sanitizing of the prosecutor's proffer, and the prosecutor's earlier statement about when appellant would be open to impeachment, occurred in the context of discussion of impeachment evidence, not domestic violence evidence. It appears that once appellant gave his *unnecessarily expansive answer*, the prosecutor may have posed her question to elicit domestic violence evidence. Accordingly, after the prosecutor apologized, she said, "I wasn't intending to do that *until the defendant opened the door and talked about the facts*, and then I had to." (Italics added.)

However, in our view, the prosecutor's apology was unnecessary since domestic violence evidence is admissible. The trial court did not rule domestic violence evidence was inadmissible or suggest the prosecutor committed misconduct by asking the third question. When the prosecutor apologized, the court stated "I'm not getting into that," the court later stated it was not saying the prosecutor could not, or should not, argue the

10

2007 offense was domestic violence evidence, and, still later, the court stated it was not finding fault. The court was concerned only with whether it should instruct the jury on domestic violence evidence, a limited concern that presupposed such evidence was admissible as far as the trial court was concerned.

In sum, even if the prosecutor's third question called for propensity evidence, domestic violence evidence is admissible. The prosecutor asked the third question, i.e., "And to defend yourself, you punched her in the face; right?" Appellant effectively answered yes. That answer was admissible domestic violence evidence and the fact that, after that answer, the prosecutor decided not to *argue to the jury* that appellant's testimony presented domestic violence evidence did not make that answer inadmissible. Moreover, appellant, by his unnecessarily expansive answer, presented mitigating evidence as to what happened during the 2007 incident.

None of the prosecutor's three challenged questions constituted a deceptive or reprehensible method to attempt to persuade the jury or denied appellant due process. No prosecutorial misconduct occurred, and the court did not admit into evidence inadmissible evidence of appellant's bad character in violation of appellant's right to due process. Finally, in light of the testimony of Corrine, Kim, and Jun, there was strong evidence of appellant's guilt, and appellant has failed to demonstrate the trial court was required to exclude any domestic violence evidence under Evidence Code section 352. Any prosecutorial misconduct was not prejudicial. (*Cf. People v. Smithey* (1999) 20 Cal.4th 936, 961.)

11

## *DISPOSITION*

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                        KITCHING, J.

We concur:



        EDMON, P. J.



        ALDRICH, J.