[No. S031616. Dec. 30, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERTO OCHOA, Defendant and Appellant.

## COUNSEL

Michael Ian Garey for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle B. Davis, Robert M. Foster, Keith I. Motley, Holly D. Wilkens and John T. Swan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

LUCAS, C. J.—Alberto Ochoa was convicted of two counts of gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)) and one count of hit-and-run driving (Veh. Code, § 20001). He argued on appeal, among other contentions, that irrelevant and prejudicial evidence of his prior conviction for driving under the influence, his probationary status, and his attendance at an alcohol awareness class, was improperly admitted at trial, and that there was insufficient evidence of his gross negligence. The Court of Appeal, by a two-to-one vote, agreed with defendant, reversed defendant's gross vehicular manslaughter convictions and remanded for resentencing for the less serious offense of vehicular manslaughter (Pen. Code, § 192, subd. (c)(3)). We disagree and will remand to the Court of Appeal for resolution of certain unresolved appellate issues.

*Facts*

The following facts, with minor modifications, are adopted from the Court of Appeal opinion in this case. On Sunday, September 2, 1990, defendant and his family attended a barbecue at his sister-in-law's house in Corona. They brought three 12-packs of beer, which were consumed by four adults during the course of the afternoon and evening. Defendant himself drank around 17 to 22 beers. When he and his wife went to bed at 11:30 p.m., at his sister-in-law's house, he was intoxicated.

Sometime no later than 1:50 a.m. on Monday, defendant awoke, entered his Ford Bronco alone, and headed for his home. He was driving west on the Garden Grove Freeway at 60 to 65 miles per hour. Traffic was light. Around this time, Brian Doan was also driving home, using the middle of three lanes, at a speed of 50 to 55 miles per hour. He saw a Bronco pass him on the left and abruptly start to move into the lane in front of him, then move back into its original lane without completing the lane change. Doan applied his brakes and slowed to 40 miles per hour. As the Bronco passed by, Doan saw its right front and rear tires cross over the lane dividing-line and then back again.

A short distance ahead of Doan's car, Brian Simurda was driving his Chevrolet pickup in the middle lane at a speed of 55 to 60 miles per hour. For the last two or three miles he had been trailing a red Honda. The Honda was travelling at 45 to 50 miles per hour, and its taillights were lighted and visible. Simurda saw the Bronco pass him in the left lane and estimated its speed at 65 to 70 miles per hour. When the Bronco was only one car length ahead of him, it changed lanes without signaling, crossing to the right side of

the lane, then back to the left. Defendant continued at the same speed, heading for the Honda. Soon thereafter, without first applying his brakes, defendant hit the left rear portion of the Honda, which spun into a ravine and hit a tree, killing the two occupants. The accident occurred no later than 1:50 a.m.

Defendant made a quick lane change without signaling and exited the freeway, taking the next off-ramp about 100 yards from the point of impact. Simurda followed and, achieving speeds of up to 80 miles per hour, cut in front of defendant's Bronco and blocked it. Another car pulled up behind the Bronco and parked, preventing its escape. Defendant was behind the wheel and said he had to call his brother. Simurda told him to wait in the car.

Eventually, after failing a series of field coordination tests, defendant was arrested for driving under the influence of alcohol. He claimed he saw neither the Honda nor its taillights until the collision. A blood sample taken about two hours later showed his blood-alcohol level to be .128 percent. A criminalist testified that, at the time of the accident, defendant's blood-alcohol level may have been as high as .15 percent, a level sufficient to render a driver incapable of safely operating a motor vehicle.

In 1988, defendant had been convicted of driving under the influence of alcohol and had been ordered not to drive with a measurable amount of alcohol in his system. He had also been ordered to attend an alcohol awareness class, which included discussion of the dangers of drinking and driving. He completed the class in 1989. During this class, defendant viewed a film showing how one drink alone may impair one's driving ability. Defendant admitted to the arresting officers that he knew he was on probation for driving under the influence, and knew that he was not supposed to drink and drive.

Based on the foregoing facts, the Court of Appeal majority ruled the evidence insufficient to sustain a finding that defendant exercised gross negligence under Penal Code section 191.5, subdivision (a). (Further statutory references are to this code.) In the majority's view, the evidence showed at most that defendant drove at high speeds while intoxicated, conduct amounting to simple negligence. Accordingly, the majority ordered defendant's gross negligence conviction set aside and remanded the case for resentencing under section 192, subdivision (c)(3) (vehicular manslaughter without gross negligence). By reason of the majority's disposition, it was unnecessary to reach defendant's remaining appellate contentions.

The Court of Appeal majority reasoned that because defendant's probable blood-alcohol level (.15 percent) was "not excessive," because he slept for

two hours before attempting to drive, because his driving involved "relatively minor speeding" in light traffic conditions, and because his lane changing evidenced "some prudent driving," no gross negligence was proved. The dissenting opinion strongly disagreed, accusing the majority of reweighing the evidence to favor defendant, contrary to the deferential standard of review ordinarily applicable in resolving evidentiary challenges to criminal convictions. As will appear, we agree with the dissent.

In addition, the Court of Appeal majority ruled that evidence of defendant's prior conviction for driving under the influence, his probationary status arising therefrom, and his attendance at an alcohol awareness class following that offense were each inadmissible to establish gross negligence. The dissenting opinion again disagreed, concluding that the foregoing evidence was admissible to show defendant's appreciation of the risks of drinking and driving. Here too, we agree with the dissent.

## Discussion

1. *Gross negligence*—As previously indicated, defendant was convicted of gross vehicular manslaughter while intoxicated. (§ 191.5, subd. (a).) That provision states in pertinent part: "Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23152 or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence." (*Ibid.*) On appeal, defendant disputed the sufficiency of the evidence regarding the requisite element of gross negligence.

■ We have previously explained that "[g]ross negligence is the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences. [Citation.] 'The state of mind of a person who acts with conscious indifferences to the consequences is simply, "I don't care what happens." ' [Citation.] The test is objective: whether a reasonable person in the defendant's position would have been aware of the risk involved. [Citation.]" (*People* v. *Bennett* (1991) 54 Cal.3d 1032, 1036 [2 Cal.Rptr.2d 8, 819 P.2d 849] [hereafter *Bennett*].)

2. *Evidentiary issues*—Before attempting to relate the evidence in this case to the foregoing standard, we first consider the preliminary question whether part of that evidence was inadmissible at trial. As previously indicated, the prosecutor elicited evidence of defendant's prior conviction

for driving under the influence of alcohol, his subsequent probation, and his attendance at traffic school, including an alcohol awareness class discussing the dangers of drinking and driving. This evidence was admitted to show defendant was previously aware of these dangers.

On appeal, defendant conceded that such evidence would have been admissible in a vehicular *murder* case based on implied malice, to show the accused's subjective awareness of the risks. (E.g., *People* v. *David* (1991) 230 Cal.App.3d 1109, 1115 [281 Cal.Rptr. 656], and cases cited.)  ▮  Defendant argued, however, that because the test of gross negligence is an *objective* one, i.e., whether a reasonable person in the defendant's position would have been aware of the risks (*Bennett, supra,* 54 Cal.3d at p. 1036), evidence of his own subjective state of mind was irrelevant and unduly prejudicial.

The Court of Appeal majority agreed, stating that "[a] defendant's particular state of mind is not the pertinent consideration, rather that of a reasonable person in the same or similar situation. [¶] . . . If a reasonable person placed in [defendant's] position would have been aware of the risks, it does not matter whether [defendant] was actually aware of them."

We believe the Court of Appeal majority's analysis is flawed. In determining whether a reasonable person *in defendant's position* would have been aware of the risks, the jury should be given relevant facts as to what defendant knew, including his actual awareness of those risks. True, as the majority observed, the defendant's *lack* of such awareness would not preclude a finding of gross negligence if a reasonable person would have been so aware. But the converse proposition does not logically follow, for if the evidence showed that defendant *actually appreciated the risks* involved in a given enterprise, *and nonetheless proceeded* with it, a finding of gross negligence (as opposed to simple negligence) would be appropriate whether or not a reasonable person in defendant's position would have recognized the risk.

Our *Bennett* decision acknowledged that, although the test for gross negligence was an objective one, "[t]he jury should therefore consider all relevant circumstances . . . *to determine if the defendant acted with a conscious disregard of the consequences rather than with mere inadvertence.* [Citations.]" (*Bennett, supra,* 54 Cal.3d at p. 1038, italics added; see also *People* v. *Costa* (1953) 40 Cal.2d 160, 166 [252 P.2d 1] [relevant that officer warned defendant, shortly before accident, regarding dangers of high-speed driving]; *People* v. *Von Staden* (1987) 195 Cal.App.3d 1423, 1428 [241 Cal.Rptr. 523] [relevant that social host advised defendant, shortly prior to accident, not to drive while intoxicated].) As in the foregoing cases, the

evidence at issue here was relevant to defendant's awareness of the risk, and was admissible on that basis.

Defendant argues that, assuming the evidence was relevant, it was unduly prejudicial and should have been excluded on that basis. (See Evid. Code, § 352.) Although section 352 confers on trial courts broad discretion to weigh the relevance of proposed evidence with its potential prejudice, and to exclude unduly prejudicial or remote items, no abuse of discretion occurred here in light of the clear relevance of the evidence. The court repeatedly admonished the jury that evidence of defendant's probation, and the conditions thereof, was introduced for the limited purpose of showing his state of mind at the time of the offense, that it was not intended to show that he violated his probation, and that the jury should not confuse the strict standards of his probation (e.g., no drinking while driving) with the legal standards governing driving while under the influence.

We conclude that the challenged evidence was properly admitted at trial.

3. *Sufficiency of evidence—* ▮ Thus, we turn to the primary issue before us, namely, whether the Court of Appeal erred in concluding there was insufficient evidence of gross negligence to sustain a conviction under section 191.5, subdivision (a).

We first observe that our role on appeal is a limited one. ▮ "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]

"Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]" (*People* v. *Jones* (1990) 51 Cal.3d 294, 314 [270 Cal.Rptr.611, 792 P.2d 643].)

As the dissenting opinion below observes, the Court of Appeal's majority opinion does not view the evidence in the light most favorable to the People, nor does it accord due deference to the findings of the trier of fact.

First, the Court of Appeal majority characterized defendant's probable .15 percent intoxication as "not excessive," a characterization finding no support

in the record. As the People observe, this percentage was nearly twice the legally permitted level for drivers of motor vehicles, and one and one half times the level at which one is presumed intoxicated and impaired. Second, the majority labeled defendant's speeding as "relatively minor," but as the People note, defendant's speed near the time of the accident was estimated by one witness to be as high as 15 miles per hour faster than the legal speed limit.

Third, the majority's belief that defendant's initial aborted lane change after passing the Doan vehicle evidenced "prudent driving," is entirely speculative and inappropriate, drawing an inference favorable to defendant rather than in support of the judgment of conviction. Under the evidence, it was just as likely that defendant's failure to complete the lane change evidenced an inebriated and confused driving pattern, rather than reflective behavior.

Finally, the Court of Appeal majority improperly focused on evidence indicating that defendant went to bed at 11:30 p.m. and slept for about two hours before attempting to drive. As the People explain, other evidence in the record rebuts the possibility that defendant could have slept for two hours (presumably from 11:30 p.m. to 1:30 a.m.) and still have travelled 45 miles to encounter his victims at approximately 1:50 a.m. According to the People's calculations, defendant would have had to average approximately 120 miles per hour, while intoxicated, to accomplish that feat.

Thus, in deciding that no gross negligence existed in this case, the Court of Appeal majority largely ignored established review standards and re-weighed the evidence. The Court of Appeal majority additionally relied on cases indicating that gross negligence is not established merely by showing that the defendant violated some traffic laws while intoxicated. (See *Bennett*, *supra*, 54 Cal.3d at pp. 1037-1039, and cases cited; *People* v. *Von Staden*, *supra*, 195 Cal.App.3d at p. 1427 [hereafter *Von Staden*].) As stated in *Von Staden*, "gross negligence cannot be shown by the *mere fact* of driving under the influence and violating the traffic laws. Otherwise, gross and simple vehicular manslaughter while intoxicated would be identical crimes with different punishments which would create obvious due process problems." (*Von Staden*, *supra*, at p. 1427.)

But this case involves no "mere" traffic violation while intoxicated. ▮ As we pointed out in *Bennett*, *supra*, 54 Cal.3d at pages 1038-1039, gross negligence may be shown from *all* the relevant circumstances, including the manner in which the defendant operated his vehicle, the level of his intoxication, and any other relevant aspects of his conduct. The record herein contains facts from which the trier of fact reasonably could infer that

defendant, (a) having suffered a prior conviction for driving under the influence of alcohol, (b) having been placed on probation, (c) having attended traffic school, including an alcohol-awareness class, and (d) being fully aware of the risks of such activity, nonetheless (e) drove while highly intoxicated, (f) at high, unsafe and illegal speeds, (g) weaving in and out of adjoining lanes, (h) making abrupt and dangerous lane changes (i) without signaling, and (j) without braking to avoid colliding with his victims' vehicle.

In short, the trier of fact could conclude from defendant's course of conduct and preexisting knowledge of the risks that he exercised so slight a degree of care as to exhibit a conscious indifference or "I don't care attitude" concerning the ultimate consequences of his actions. Applying the objective test for gross negligence, any reasonable person in defendant's position would have been aware of the risks presented by his conduct. (*Bennett*, *supra*, 54 Cal.3d at p. 1036.) As *Bennett* states, "the finding of gross negligence . . . may be based *on the overall circumstances surrounding the fatality*. Intoxication is one of those circumstances and its effect on the defendant's driving may show gross negligence." (*Id.* at p. 1040, italics added.)

A finding of gross negligence in this case is consistent with prior case law. In *Bennett*, *supra*, 54 Cal.3d 1032, the defendant, driving while intoxicated, wove in and out of traffic, passed three cars on a blind curve, exceeded the speed limit, and ultimately lost control of his car at the bottom of a hill. The car rolled several times, killing one passenger. We upheld a finding of gross negligence based on those facts. In *Von Staden*, *supra*, 195 Cal.App.3d 1423, the defendant drove while highly intoxicated (.22 percent blood-alcohol level) on a foggy night, travelling 30 miles per hour over the speed limit. A serious accident ensued. The Court of Appeal held that defendant's excessive intoxication and driving speed were sufficient to sustain a finding of gross negligence. As previously explained, facts comparable to *Bennett* and *Von Staden* exist in this case.

## Conclusion

Viewing the facts in a light favorable to the judgment, we conclude that the trial court's finding of gross negligence should be sustained. The judgment of the Court of Appeal is reversed with directions to determine defendant's remaining unresolved appellate issues.

Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

**PANELLI, J.,** Concurring and Dissenting.—I concur in the decision to reverse the judgment of the Court of Appeal because, in my view, the

evidence supports the trial court's finding of gross negligence. However, I disagree with the majority's conclusion that evidence of the defendant's subjective awareness of the risk was admissible on that issue.

The majority acknowledges, as it must (*People* v. *Bennett* (1991) 54 Cal.3d 1032, 1036 [2 Cal.Rptr.2d 8, 819 P.2d 849]; *People* v. *Watson* (1981) 30 Cal.3d 290, 296 [179 Cal.Rptr. 43, 637 P.2d 279]), that gross negligence has an *objective* definition. To be precise, gross negligence is conduct that, when judged by the standards of an objectively reasonable person, reflects so slight a degree of care as to warrant the presumption that the actor was indifferent to the welfare of others. (*People* v. *Watson, supra*, 30 Cal.3d at p. 296; see also *People* v. *Bennett, supra*, 54 Cal.3d at p. 1036.)

Having thus tipped its hat to precedent, the majority then essentially ignores it by redefining the objectively reasonable person as one who shares the defendant's subjective knowledge. The majority attempts to justify this by misinterpreting language in *People* v. *Bennett* (*supra*, 54 Cal.3d at p. 1036) to the effect that the test is whether "a reasonable person *in the defendant's position* would have been aware of the risk involved" (italics added). The end result is a test that is no longer truly objective. Rather than evaluating the nature of the defendant's *conduct*, the majority actually evaluates his subjective awareness of the risk, as evidenced by his prior conviction for driving under the influence, the terms of his probation, and the warnings he received at an alcohol-awareness class.

The case on which the majority primarily relies, *People* v. *Bennett, supra*, 54 Cal.3d 1032, had nothing to do with the admissibility of evidence of the defendant's subjective awareness of risk. Instead, the question presented was whether the court properly "allowed the jury to find gross negligence from the circumstances of [defendant's] intoxication alone, without regard to his manner of driving." (*Id.* at p. 1035.) Answering this question, we held that "the jury could reasonably have found that [the] defendant's high level of intoxication led to his reckless manner of driving." (*Id.* at p. 1040.) We did *not* hold that evidence of the defendant's subjective awareness of risk was admissible. Nor was such a holding implicit because the evidence in question was entirely objective: The defendant had simply had far too much to drink. (*Id.* at p. 1034.)

Rather than relying on the *holding* of *Bennett*, which has nothing to do with this case, the majority relies on *Bennett*'s use of the phrase "conscious indifference." However, the majority completely misunderstands the role that the notion of "conscious indifference" has played in defining gross negligence. Until today, "conscious indifference," or sometimes simply

"indifference," has been nothing more than an aid to help the jury understand the hypothetical, objectively presumed mental state of the person whose conduct is sufficient egregious to be called grossly negligent.

· The case on which *Bennett* principally relied, *People* v. *Watson, supra,* 30 Cal.3d 290, offers the majority no assistance. *Bennett* cited *Watson* for the proposition that "[g]ross negligence is the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences." (*People* v. *Bennett, supra,* 54 Cal.3d at p. 1036, citing *People* v. *Watson, supra,* 30 Cal.3d at p. 296.) This statement is completely consistent with an objective definition of gross negligence: If the defendant's conduct is sufficiently egregious he is *presumed* to have been consciously indifferent to the consequences, regardless of his actual mental state.

Moreover, the court in *Watson, supra,* 30 Cal.3d 290, carefully distinguished between gross negligence, on one hand, and subjective awareness of risk, or implied malice, on the other. The defendant, an intoxicated driver charged with second degree murder, argued that he could properly be charged only with vehicular manslaughter. The defendant reasoned that, in the context of drunken driving, the more specific manslaughter statute implicitly superseded the more general murder statute. We rejected the argument, explaining that gross negligence and subjective awareness of risk were different concepts: "The requisite culpability for the vehicular manslaughter charged here is *gross negligence* [citation], which has been defined as the exercise of so slight a degree of care as to raise a *presumption* of conscious indifference to the consequences. (See *People* v. *Costa* (1953) 40 Cal.2d 160, 166 [252 P.2d 1].) On the other hand, *malice* may be implied when a person, *knowing* that his conduct endangers the life of another, nonetheless acts deliberately with conscious disregard for life. [Citations.]" (*People* v. *Watson, supra,* 30 Cal.3d at p. 296, second and fourth italics added.)

The court in *Watson* was careful to note that "we have applied different tests in determining the required mental states of gross negligence or malice. A finding of gross negligence is made by applying an *objective* test: if a *reasonable person* in defendant's position would have been aware of the risk involved, then defendant is presumed to have had such an awareness. [Citation.] However, a finding of implied malice depends upon a determination that defendant *actually appreciated* the risk involved, i.e., a *subjective* standard. [Citation.]" (*People* v. *Watson, supra,* 30 Cal.3d at pp. 296-297, italics in original.)

Thus, the holdings of *Bennett* and *Watson* do not support the majority's conclusion. Unfortunately, at one point in its opinion the *Bennett* court

alluded to the objective test in the following, imprecise language: "The jury should therefore consider all relevant circumstances, including level of intoxication, to determine if the defendant acted with a conscious disregard of the consequences rather than with mere inadvertence." (*People* v. *Bennett*, *supra*, 54 Cal.3d at p. 1038.) The lack of precision was excusable in *Bennett* because the court was not addressing the admissibility of evidence of subjective awareness. However, the majority has transformed the *Bennett* court's momentary lack of precision on an immaterial point into a new, subjective test for gross negligence. Under *Bennett*, the majority now tells us, "the evidence at issue here was relevant to defendant's awareness of the risk, and was admissible on that basis." (Maj. opn., *ante*, at pp. 1205-1206.)

The majority's analysis cannot withstand scrutiny. *Bennett*, as already noted, did not address the admissibility of evidence of the defendant's subjective awareness. It is axiomatic that "[c]ases are not authority for propositions not considered." (*In re Tartar* (1959) 52 Cal.2d 250, 258 [339 P.2d 553].) Nor does *Watson*, the case on which *Bennett* relied, authorize the admission of such evidence. The two cases cited by the majority as upholding the admission of such evidence, *People* v. *Costa* (1953) 40 Cal.2d 160, 166 [252 P.2d 1], and *People* v. *Von Staden* (1987) 195 Cal.App.3d 1423, 1428 [241 Cal.Rptr. 523], did so with so little analysis that the majority evidently does not consider their analysis on this point, as opposed to their facts, worth repeating.

In any event, because the majority has declared that a defendant's subjective awareness of the risk is relevant to a charge of vehicular manslaughter with gross negligence, it necessarily follows that a defendant may introduce evidence to show that he was not subjectively aware. To deny the defendant the right to present relevant evidence would create serious problems under the due process clause. (See, e.g., *Chambers* v. *Mississippi* (1973) 410 U.S. 284, 302 [35 L.Ed.2d 297, 310, 93 S.Ct. 1038]; *In re Oliver* (1948) 333 U.S. 257, 273 [92 L.Ed. 682, 694, 68 S.Ct. 499]; see also *People* v. *Jennings* (1991) 53 Cal.3d 334, 372 [279 Cal.Rptr. 780, 807 P.2d 1009]; *People* v. *Babbitt* (1988) 45 Cal.3d 660, 684 [248 Cal.Rptr. 69, 755 P.2d 253].)

Mosk, J., concurred.