Filed 5/20/26  P. v. Deetch CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BENJAMIN SHANE DEETCH,<br><br>Defendant and Appellant. | 2d Civ. Nos. B343608, B343609<br>(Los Angeles Super. Ct. Nos. NA121676-01, BA488179-02) |

A jury convicted Benjamin Shane Deetch of vehicular manslaughter with gross negligence (Pen. Code, § 192, subd. (c)(1)) after his sleeping passenger was killed when he drove his car into the back of a semitruck.  Based on the same conduct, the trial court also found him to be in violation of his probation in a separate human trafficking case.  Deetch appeals the judgment in the vehicular manslaughter case and the probation revocation order in the human trafficking case, now consolidated on appeal.  He contends there is no substantial evidence to support the verdict or the probation violation.  We disagree and affirm the judgments.

FACTUAL AND PROCEDURAL HISTORY

On the evening of June 1, 2022, Deetch and Lesly Janet Cabrera attended a gathering in Compton. Cabrera left the gathering around 11:40 p.m. and fell asleep in Deetch's parked Infiniti without fastening her seatbelt. An hour later, Deetch entered the car, saw that Cabrera was asleep and unbuckled, and began driving east toward a hotel in Anaheim without waking her or securing her seatbelt.

At around 1:00 a.m., Deetch was driving eastbound on Highway 91 near the interchange with Highway 710 in Long Beach. Cabrera was still asleep and unbuckled. Another motorist, Cardella Burtch, was driving 50 to 60 miles per hour when she noticed Deetch approaching rapidly from behind. She estimated he was traveling at least 70 miles per hour (in a 65 mph zone) and she changed lanes for fear of being struck. Deetch passed on her left and quickly outdistanced her.

Ahead of Deetch, Hugo Herrera was driving an 18-wheel semitruck at approximately 35 miles per hour after merging onto Highway 91 two to three minutes earlier. Deetch's Infiniti struck the rear of Herrera's trailer, blowing out two of Herrera's tires before spinning out and coming to rest near the center divider.

The cause of the collision was disputed at trial. Herrera testified that Deetch suddenly swerved from his lane into Herrera's and struck the rear left side of the trailer. The defense presented CHP measurements and expert testimony showing Herrera's truck was straddling the lane line at the point of impact, with the left rear tire about one foot over the line. Photographs also depicted several rear lights on Herrera's trailer as dim or unilluminated after the collision. Herrera said he had checked all lights when his shift started in the afternoon, and all

were working.  The responding officer was unable to determine whether the unlit lights were in that condition before or as a result of the crash.

Cabrera, unrestrained and asleep at the time of the collision, was thrown forward and struck her head on the windshield, sustaining fatal injuries.  Deetch pulled Cabrera from the car and held her near the center divider.  Minutes later, another car struck the abandoned Infiniti.  Deetch and Cabrera were clear of this second impact.  Cabrera died as a result of the collision.

The People charged Deetch with vehicular manslaughter with gross negligence (count 1) and driving on a suspended license (count 2).  At the time of the accident, Deetch was on probation in a human trafficking case.  His probation terms and conditions required him to obey all laws.

The trial court held a combined preliminary hearing and probation violation hearing.  The court held Deetch to answer on the new charges and found him to be in violation of his probation for failure to obey all laws.

Jury trial commenced. Before evidence was presented, Deetch pleaded no contest to count 2, driving on a suspended license.  After trial, the jury found Deetch guilty of vehicular manslaughter with gross negligence.

The trial court sentenced Deetch to 16 months on the manslaughter conviction to be served consecutive to an 18-year sentence Deetch was serving in an unrelated attempted murder case.  In the probation case, the court imposed four-year-eight-month sentences for each of the two human trafficking counts, consecutive to each other and the principal term.

Deetch timely filed notices of appeal in both cases and the appeals were consolidated.

## DISCUSSION

### I. Vehicular Manslaughter

#### Standard of review

In assessing the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) It is the exclusive province of the jury to determine the credibility of witnesses and to resolve factual conflicts. We do not reweigh the evidence or substitute our own credibility determinations for those of the trier of fact. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206. (*Ochoa*).)

#### Gross negligence

Deetch contends the evidence was insufficient to support gross negligence. We disagree.

Gross negligence is "the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences." (*People v. Bennett* (1991) 54 Cal.3d 1032, 1036 (*Bennett*).) The test is objective: whether a reasonable person in the defendant's position would have been aware of the risk involved. (*Ibid.*) Gross negligence may be shown from all the relevant circumstances, including the manner in which the defendant operated his vehicle and any other relevant aspects of his conduct. (*People v. Ho* (2018) 26 Cal.App.5th 408, 415 (*Ho*).)

Although Deetch contested the cause of the collision at trial, pointing to evidence that the truck driver was negligent, we

4

cannot simply substitute a version of the facts the jury did not find true. At least one reasonable interpretation of the disputed evidence is that Deetch was grossly negligent.

Three acts, considered cumulatively, support the jury's finding here. First, the uncontested evidence is that Deetch decided to drive on the freeway after midnight knowing Cabrera was asleep and unrestrained in the front passenger seat. This was a knowing violation of Vehicle Code section 27315, subdivision (d). That decision created a substantial risk of serious injury or death in the event of any sudden maneuver or collision.

Second, he traveled at an unsafe speed. Burtch estimated Deetch was traveling at least 70 miles per hour. She felt compelled to change lanes to avoid him and watched him quickly outdistance her. Her lane change confirms that his speed was not merely above the posted maximum but unsafe for a nighttime freeway merge with a sleeping, unbelted passenger. (Veh. Code, § 22350.)

Finally, the jury could have found that Deetch made a sudden lane change, driving his car into the rear of a large commercial truck without slowing, braking, or taking any evasive action before impact. A reasonable person aware of Cabrera's vulnerability would have recognized that this course of conduct created a high probability of serious injury or death.

Deetch argues the evidence of gross negligence is undermined by the dim or inoperable lights on Herrera's trailer, which he contends rendered the truck difficult to see in the dark. But this was contested, and we must view the evidence in the light most favorable to the judgment. The responding officer was

5

unable to determine whether the malfunctioning lights were broken before or as a result of the crash.

Deetch also contends that because the facts here are less egregious than those in cases like *Bennett*, *supra*, 54 Cal.3d 1032 (drunk driving), *Ochoa*, *supra*, 6 Cal.4th 1199 (extreme intoxication), and *People v. Nicolas*, *supra*, 8 Cal.App.5th 1165 (17 minutes of texting at 80 miles per hour), the evidence cannot support gross negligence. Gross negligence, however, does not require any particular combination of aggravating factors. It may be shown from "all the relevant circumstances" of the defendant's driving and conduct. (*Ho*, *supra*, 26 Cal.App.5th at p. 415.) The absence of intoxication or distracted driving does not preclude a finding of gross negligence where, as here, the defendant knowingly began a freeway drive with a sleeping, unbelted passenger and then drove at excessive speed into an adjacent lane without any attempt to avoid the truck in front of him.

Deetch also argues that his immediate rescue of Cabrera after the collision shows he was not consciously indifferent to human life. But the question is whether a reasonable person in Deetch's position would have been aware of the risk created by his pre-crash conduct, not what Deetch's post-crash behavior reveals about his subjective feelings toward Cabrera. (*Bennett*, *supra*, 54 Cal.3d at p. 1036.)

*Ordinary negligence and causation*

Deetch separately contends that the evidence does not support even a finding of simple negligence. He argues that Herrera's lane encroachment was the true cause of the accident. Since we hold the evidence supported a finding of gross

6

negligence, it necessarily supported a finding of simple negligence.

Again, we do not reweigh the evidence. Herrera and the defense expert gave conflicting testimony about lane positioning, and the jury resolved that conflict against Deetch. We may not revisit credibility determinations on appeal. (*Ochoa, supra*, 6 Cal.4th at p. 1206.) Even if Herrera's truck was partially over the lane line, as the defense contended, the jury could reasonably conclude that Deetch's speed and lane change were a substantial factor in causing the collision. When multiple concurrent causes contribute to a death, each defendant whose conduct was a substantial factor in bringing about that result bears criminal liability. (*People v. Brady* (2005) 129 Cal.App.4th 1314, 1325 (*Brady*).)

Deetch also contends that because no expert testified a seatbelt would have saved Cabrera, and because Deetch himself was unbuckled and survived, the seatbelt violation cannot be the proximate cause of her death. But the prosecution was not required to prove that the seatbelt violation, standing alone, caused Cabrera's death. It needed only to prove that Deetch's conduct as a whole was a substantial factor contributing to her death. (*Brady, supra*, 129 Cal.App.4th at p. 1325.) There is no dispute that Cabrera died from the collision. A jury could find, based on the evidence, that the collision resulted from Deetch's negligent driving and that Cabrera's injuries were fatal because her seatbelt was not buckled.

*Superseding cause*

Deetch argues that even if his driving was negligent, Herrera's conduct was a superseding intervening cause that

7

severed the causal connection between the seatbelt failure and Cabrera's death.

An independent intervening cause only breaks the causal chain if it is "unforeseeable . . . an extraordinary and abnormal occurrence, which rises to the level of an exonerating, superseding cause." (*People v. Cervantes* (2001) 26 Cal.4th 860, 871.)  A dependent intervening cause, which is a normal and reasonably foreseeable result of the defendant's original act, does not relieve the defendant of liability.  (*Brady*, *supra*, 129 Cal.App.4th at p. 1325.)  The jury could have found that a large commercial truck traveling at 35 miles per hour on a freeway at 1:00 a.m. is not an extraordinary or abnormal occurrence. Whatever role Herrera's position may have played in the collision, the jury did not have to find that it rose to the level of a superseding cause.

## II. Probation Violation

### Standard of review

The trial court found by a preponderance of the evidence that Deetch had violated his probation.  We review that decision to determine if it was supported by substantial evidence.  (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443-447.)

### Sufficiency

Because we affirm the manslaughter conviction, the probation violation finding (for failure to obey all laws) based on the same conduct must be affirmed as well.  The manslaughter conviction establishes that Deetch violated the condition of his probation that required him to obey all laws.  (*People v. Arreola* (1994) 7 Cal.4th 1144, 1162; *People v. Armas* (2011) 191 Cal.App.4th 1173, 1187.)

Even considering the independent probation violation hearing record, the evidence was more than sufficient. Herrera testified that Deetch's vehicle was "coming really fast" and "getting real close" before it suddenly swerved into his lane. The CHP officer who responded to the scene testified that Deetch told him Cabrera was asleep and unbuckled when he began driving, that he did not attempt to wake her or fasten her seatbelt, and that he was traveling approximately 70 miles per hour when the collision occurred. That evidence supports the violation finding.

Deetch's reliance on *People v. Quarterman* (2012) 202 Cal.App.4th 1280 is misplaced. In *Quarterman*, the court refused to find a probation violation because the prosecution presented no evidence that the property (in a receiving stolen property case) was stolen. Without proof of that essential element, there was no proof the defendant had failed to obey all laws. (*Id.* at pp. 1287, 1291.) Here, the People proved all elements of gross vehicular manslaughter – at the probation violation hearing, and again at trial.

*Willfulness*

Deetch contends his conduct was not willful because the collision was an accident beyond his control which he did not intend. Any probation violation, therefore, was also not willful. The test, however, is whether his conduct was deliberate, not whether the consequences were intended. (*People v. Galvan* (2007) 155 Cal.App.4th 978, 983.) Again, the trial court did not abuse its discretion in finding Deetch's decision to drive on the freeway at night, with an unbuckled, sleeping passenger, and then change lanes unsafely, was deliberate conduct. The fact that there was some evidence that Herrera may have contributed

9

to the collision does not render Deetch's own course of conduct involuntary.

*Probation violation sentencing*

Deetch contends the trial court abused its discretion by terminating his probation and sentencing him to prison instead of reinstating probation. He correctly notes the standard in deciding whether to revoke or reinstate probation is "whether the probationer's conduct demonstrates that they are no longer a suitable candidate for community supervision and that the goals of probation have been frustrated."

We review the decision for abuse of discretion. (*People v. Bolian* (2014) 231 Cal.App.4th 1415, 1421.) "The decision whether to reinstate probation or terminate probation . . . rests within the broad discretion of the trial court." (*Ibid*.)

Here, Deetch was on probation for human trafficking when he committed gross vehicular manslaughter. At the time the trial court sentenced him to prison on the probation violation, Deetch was already serving an 18-year sentence for attempted murder. On these facts, we cannot find the court abused its discretion by not reinstating Deetch's probation. Deetch was no longer a suitable candidate for community supervision.

Deetch relies on *People v. Sturgeon* (1975) 53 Cal.App.3d 711, 714, for the proposition that a trial court must weigh mitigating circumstances before revoking probation. But *Sturgeon* cuts the other way. It holds that where revocation rests on a criminal conviction, a probationer may not, as a matter of right, relitigate the underlying facts even for purposes of mitigation. (*Ibid*.)

10

## DISPOSITION

We affirm the judgments in both cases, NA121676-01 and BA488179-02.

<u>NOT TO BE PUBLISHED.</u>

VAN ROOYEN, J.*

We concur:

YEGAN, Acting P. J.

CODY, J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11

Laura L. Laesecke and Kerry L. White, Judges

Superior Court County of Los Angeles

_____

Omer A. Khan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.