Filed 5/18/21  P. v. Williams CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DONTAE RAY WILLIAMS, <br><br> Defendant and Appellant. | B306138 <br> (Los Angeles County <br> Super. Ct. No. BA281894) |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa B. Lench, Judge.  Affirmed.

Spolin Law, Aaron Spolin and Jeremy Cutcher for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

This appeal is from the trial court's denial of defendant and appellant Dontae Ray Williams' motion for resentencing under Penal Code section 1170.95.[1]

In May 2006, by amended information appellant, along with codefendants Wilbur Lawson and Sean Thomas, was charged with murder (§ 187, subd. (a), count 1) and robbery (§ 211, count 2). The information also alleged, inter alia, that the murder had been committed during the commission of robbery (§ 190.2, subd. (a)(17)), that a principal personally used a firearm (former § 12022, subd. (a)(1)), and that appellant was a minor of at least 16 years of age at the time of the crimes (Welf. & Inst. Code, § 707, subd. (d)).

Appellant's trial was severed from that of Lawson and Thomas. After the close of evidence, the trial court determined that appellant was a minor of at least 16 years of age at the time of the crimes. On January 17, 2007, a jury convicted appellant of first degree felony murder and second degree robbery, and found true the allegation that that a principal had used a firearm.[2] Appellant was sentenced to 25 years to life plus one year on count 1, plus an additional four-year term for robbery, which was stayed under section 654.

---

[1]     Undesignated statutory references are to the Penal Code. Neither codefendant is a party to this appeal.

[2]     The jury was unable to reach a decision on whether the murder was committed during the commission of robbery, and the court declared a mistrial as to that allegation.

In his direct appeal in 2008, appellant requested that we modify the abstract of judgment to impose joint and several liability against all three defendants for the restitution fine the court had previously imposed against each defendant individually. (*People v. Williams et al.* (May 20, 2008, B198076) [nonpub. opn.] (*Williams I*).) We agreed, and directed the superior court to prepare amended abstracts of judgment. (*Id.* at p. *9.) In all other respects, we affirmed appellant's judgment of conviction. (*Ibid.*)

In 2019, appellant filed a petition for resentencing under section 1170.95, which provides that persons who were convicted under theories of felony murder or murder under the natural and probable consequences doctrine, and who could no longer be convicted of murder following the enactment of Senate Bill No. 1437 (S.B. 1437), may petition the sentencing court to vacate the conviction and resentence on any remaining counts. (Stats. 2018, ch. 1015, § 1, subd. (f).) Following the appointment of counsel and briefing by the parties, the court issued an order to show cause and ordered a hearing under subdivision (d) of section 1170.95. At the hearing, the People requested that the court reconsider its decision to issue the order to show cause, and argued that appellant's record of conviction established beyond a reasonable doubt that he was a major participant who acted with reckless indifference to human life. Appellant argued that he was merely a bystander to the murder.

After taking the matter under submission, the court denied the petition on two grounds. The court first concluded that it had improvidently issued the order to show cause, because appellant's

3

record of conviction established that he was a major participant who acted with reckless indifference as a matter of law. "Assuming the court is precluded from reconsideration of its issuance of an order to show cause," the court held that the "facts demonstrate beyond a reasonable doubt that [appellant] was a major participant who acted with reckless indifference to human life."

On appeal, appellant contends that the trial court did not apply the correct standard of review at the order to show cause hearing under subdivision (d)(3) of section 1170.95, which he asserts requires the prosecution to prove his liability for murder beyond a reasonable doubt consistent with *People v. Rodriguez* (2020) 58 Cal.App.5th 227, review granted March 10, 2021, S266652 (*Rodriguez*), and *People v. Lopez* (2020) 56 Cal.App.5th 936, review granted February 10, 2021, S265974 (*Lopez*). Appellant also contends that the trial court's findings of major participation and reckless indifference are not supported by substantial evidence. The People argue that the trial court in this case applied the beyond-a-reasonable-doubt standard, although it need only have applied the substantial evidence standard of review under *People v. Duke* (2020) 55 Cal.App.5th 113, review granted January 13, 2021, S265309 (*Duke*), and that the evidence supports the trial court's ruling.

We conclude that the trial court applied the beyond-a-reasonable-doubt standard in this case when determining whether appellant was ineligible for resentencing at the section 1170.95, subdivision (d) hearing. Thus, we need not enter the debate as to whether that standard or substantial evidence is the legally required standard. Also, in our review of the trial court's ruling, we conclude that substantial

4

evidence supports the finding that appellant was a major participant who acted with reckless indifference to human life. Thus, we affirm the order.

## FACTUAL BACKGROUND[3]

On the evening of February 24, 2005, Osman Alvarado saw three young men standing in front of a Dollar Warehouse on 60th Street and Vermont Avenue. One of the men was wearing a mask, and the other two men were wearing hoods. Alvarado walked to the Dollar Warehouse and entered the store to look for a drink. When he heard someone demand money near the cash register, he looked up at a circular mirror. Through the mirror, Alvarado saw two men standing in front of the cashier, and one man standing in the doorway of the entrance looking out at the parking lot. One of the men standing in front of the store counter was pointing a gun directly at the cashier. Though the cashier complied, a struggle ensued in which several gunshots were fired. The three men fled the store. According to a medical examiner, the cashier died from a single gunshot wound to his back.

Alvarado's sister, Guadalupe Rivera, witnessed the robbery and shooting from the parking lot. Rivera noticed three men outside the

---

[3] We granted the People's request to take judicial notice of the appellate record in *Williams I*. In that appeal, appellant did not challenge the sufficiency of the evidence to support his murder conviction, and we did not recite the evidence presented at his trial. Our recitation of the facts in this appeal is based on the record of appeal in *Williams I*.

5

Dollar Warehouse because one was wearing a Halloween mask and seemed to be "staring at [her] brother" as he was entering the store. The masked man followed Alvarado into the store, and then took out a gun, pointed it at another man inside the store, and yelled "give me your money." The masked man's two companions watched through the store's glass window. Then, they entered the store and bumped into the masked man as he attempted to exit the store. At that point Rivera heard two or three gunshots, after which she saw the masked man and his companions run away.

Police officers responding to the scene recovered a single glove from the sidewalk outside the store and a pair of gloves in nearby bushes. After receiving information that the robbers may have visited a doughnut shop approximately 80 feet away from the Dollar Warehouse shortly before the incident, officers inspected the doughnut shop and recovered a price tag for a pair of gloves in a trash can.[4] Surveillance footage obtained from the Dollar Warehouse, which was played for the jury, depicted two men wearing gloves inside the store at the time of the robbery.

Around 1:00 a.m. on March 6, 2005, a deputy sheriff observed appellant walking down the street. As the deputy sheriff and his partner approached, appellant "grabbed his left pocket with his hand and began running [away]." During the ensuing chase, appellant discarded a loaded Iver Johnson Arms revolver, which the officers

---

[4]    A fingerprint belonging to Thomas was pulled from the price tag.

recovered after his arrest. A criminalist compared a bullet fired by the recovered revolver to those fired during the store shooting and determined they were of the same caliber and bullet type. The criminalist also opined that the gun used during the shooting was manufactured by U.S. Revolver, Iris Orvia, or Iver Johnson Arms.[5]

On April 17, 2005, Rivera positively identified appellant out of a photographic lineup as one of the men she had seen outside the Dollar Warehouse moments before the robbery and shooting. Appellant was noticeable to Rivera because he had a distinctive "lineup" haircut.

The following day, investigating officers interviewed appellant. Audio of the interview was played for the jury. During the interview, appellant implicated himself, his "homie Sean [Thomas]," and his cousin "Levi" Lawson in the robbery and shooting. Appellant admitted that the robbery was his and Thomas's idea (they needed money for "dope") and that he received more than $50 from the robbery. Appellant also admitted that he had the gun in his possession before the shooting, Lawson used the gun during the robbery, and the gun was returned to him after the robbery. Appellant also admitted he was inside the store or in the store doorway at the time of the shooting.

---

[5] Because the bullets recovered from the store shooting were damaged, the criminalist was unable to determine if they had been fired from the revolver that officers had recovered from the scene of defendant's arrest.

## PROCEDURAL BACKGROUND

On February 26, 2019, appellant filed a petition for resentencing pursuant to section 1170.95, claiming entitlement to relief because he was convicted of first degree murder under a felony-murder theory or the natural and probable consequences doctrine. Appellant requested that counsel be appointed on his behalf. In its response to the petition, the People argued that appellant's conduct established that he was a major participant who acted with reckless indifference as a matter of law under the factors set forth in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).[6] Appellant filed a reply brief and request for the court to issue an order to show cause. Following a hearing on the petition, the trial court issued an order to show cause, and ordered that a hearing take place in accordance with subdivision (d) of section 1170.95.

At the order to show cause hearing, the People informed the court that they were submitting "on the record of conviction that [they had] submitted already and on the arguments presented in [their] moving documents." According to the People, "the facts in the record of conviction show that the *Banks* factors and the *Clark* factors are such that the [appellant] was a major participant who acted [with] reckless indifference to life." Defense counsel responded that the People had failed to meet their burden under subdivision (d) of section 1170.95.

---

[6] The People also filed an opposition to the petition on constitutional grounds not at issue in this appeal.

Counsel also argued that appellant was a "mere bystander to homicide," and was not present when the shooting occurred.

After taking the matter under submission, the court issued a memorandum of decision denying the petition. The court first concluded that it had improvidently issued the order to show cause, as appellant's record of conviction established that he could not meet his burden under subdivision (a)(3) of section 1170.95 demonstrating that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189" made effective by S.B. 1437. The court reached this conclusion after finding that appellant's conduct during the robbery demonstrated that he was a major participant who acted with reckless indifference to human life under *Banks* and *Clark*. In the event it was "precluded from reconsideration of its issuance of an order to show cause," the court held that the People had met their burden under subdivision (d)(3) of section 1170.95, as the "facts demonstrate beyond a reasonable doubt that [appellant] was a major participant who acted with reckless indifference to human life."

Appellant timely filed a notice of appeal from the order denying his petition.

## DISCUSSION

1. *Governing Law: Section 1170.95*

The legislature enacted S.B. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a

9

major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, § 189, subd. (e).)

S.B. 1437 also "added a crucial limitation to section 188's definition of malice for purposes of the crime of murder." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 326, rev. granted, S260493, Mar. 18, 2020.) Under the revised section 188, subdivision (a)(3), "'[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' [Citations.]" (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135, rev. granted, S260598, Mar. 18, 2020.)

Section 1170.95, as enacted by S.B. 1437, permits individuals who were convicted of felony-murder or murder under the natural and probable consequences doctrine, but who could not be convicted of murder following S.B. 1437's changes to sections 188 and 189, to petition the sentencing court to vacate the conviction and resentence on any remaining counts. (§ 1170.95, subd. (a).) A petition for relief under section 1170.95 must include a declaration by the petitioner that he or she is eligible for relief under section 1170.95 based on all the requirements of subdivision (a), the superior court case number and year of the petitioner's conviction, and a request for appointment of counsel, should petitioner seek appointment. (§ 1170.95, subd. (b)(2).)

If the petition includes the required information, subdivision (c) of section 1170.95 requires that the court initially review the petition to determine if the petitioner has made "a prima facie showing" that he or she falls within the provisions of section 1170.95. If the petition makes that showing, the court must appoint counsel, if requested, and review

10

the petition a second time after briefing by the parties to determine if petitioner has established a prima facie case for relief. (*Ibid*.) If the court determines that the petitioner made a prima facie showing, it must issue an order to show cause and hold a hearing within 60 days thereof to determine whether to vacate the murder conviction, recall the sentence, and resentence the petition on any remaining counts. (§ 1170.95, subds. (c), (d)(1).)

At the hearing on the order to show cause, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) The prosecutor and the petitioner "may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid*.)

2.    *Standard of Review at the Order to Show Cause Hearing*

The parties dispute what standard of review should govern the trial court's determination of ineligibility at a section 1170.95, subdivision (d)(3) hearing. The People contend that determination should be governed by the substantial evidence standard as set forth in *Duke, supra,* 55 Cal.App.5th 113. The court in *Duke* held that at an order to show cause hearing, "the prosecution must . . . prove beyond a reasonable doubt that the defendant *could* still have been convicted of murder under the new law—in other words, that a reasonable jury could find the defendant guilty of murder with the requisite mental state for that degree of murder. This is essentially identical to the

11

standard of substantial evidence." (*Id.* at p. 123, citing *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)[7]

On the other hand, appellant asserts that the beyond-a-reasonable-doubt standard governs determinations of ineligibility, relying on *Rodriguez, supra,* 58 Cal.App.5th 227, and *Lopez, supra,* 56 Cal.App.5th 936. The court in *Lopez* disagreed with the holding in *Duke.* (56 Cal.App.5th at pp. 948–950.) It held that the plain language of section 1170.95 requires "the prosecutor to prove beyond a reasonable doubt each element of first or second degree murder under current law in order to establish ineligibility." (*Id.* at p. 949.) The *Rodriguez* court reached the same conclusion as in *Lopez*, albeit for different reasons. *Rodriguez* found the holding in *Duke* to be at odds with the legislative goal and stated purpose of section 1170.95—to reform "aider and abettor liability in homicide cases to more equitably sentence both past and future offenders in relation to their own actions and subjective mentes reae. (See Stats. 2018, ch. 1015, § 1, subds. (f), (g).)" (58 Cal.App.5th at p. 240.) That goal would be best served, *Rodriguez* reasoned, by resentencing individuals convicted of murder under the law before S.B. 1437's enactment, if the record of conviction—or if new,

---

[7]     The Supreme Court granted review in *Duke* to decide the following issue:  "Can the People meet their burden of establishing a petitioner's ineligibility for resentencing under . . . section 1170.95, subdivision (d)(3) by presenting substantial evidence of the petitioner's liability for murder under . . . sections 188 and 189 as amended by Senate Bill No. 1437 [citation], or must the People prove every element of liability for murder under the amended statutes beyond a reasonable doubt?"

additional evidence introduced at the subdivision (d)(3) hearing—fails to establish beyond a reasonable doubt that the individual acted with the required mental state that is now required following S.B. 1437's enactment. (*Id.* at p. 241; see also *People v. Duchine* (2021) 60 Cal.App.5th 798, 814 ["[t]he [*Duke*] interpretation . . . would mean the prosecution's burden would be to prove 'beyond a reasonable doubt' that 'substantial evidence' exists, which by itself borders on incomprehensible"]; *People v. Clements* (2021) 60 Cal.App.5th 597, 615 (*Clements*) ["because the substantial evidence inquiry strips the standard of proof from the reviewing court's analysis, interpreting the statute as directing trial judges to sit as quasi-appellate courts would effectively read the standard of proof out of the provision"], rev. granted Apr. 28, 2021, S267624.)

We need not enter the debate, because it is clear in the present case that the trial court applied the standard of beyond a reasonable doubt. Thus, it matters not whether the court could have appropriately used the standard of substantial evidence.

Appellant suggests that the court did not apply the beyond a reasonable doubt standard, because the court did not expressly "requir[e] the prosecutor to prove beyond a reasonable doubt each element of first or second degree murder." But there is no ambiguity in the trial court's application of the standard of review. In its order denying the petition, the court correctly stated that it was the People's "burden to prove beyond a reasonable doubt that [appellant was] not entitled to resentencing" under subdivision (d)(3) of section 1170.95. At the order to show cause hearing, the People informed the court that it

13

was submitting "on the record of conviction that [it had] submitted already and on the arguments presented in [its] moving documents." Based on the arguments set forth in their response to the petition (which we note is extensive),[8] the People argued that "the facts in the record of conviction show that the *Banks* factors and the *Clark* factors are such that the [appellant] was a major participant who acted [with] reckless indifference to life." Appellant has cited no authority, and we are aware of none, requiring the People to restate in detail their position at the order to show cause hearing after previously briefing the same issue. Based on his robbery conviction in this case (which he has never challenged below or on appeal), appellant would be liable today for first degree felony murder if he was a major participant who acted with reckless indifference. (See §§ 1170.95, subd. (a)(3), 188, subd. (a)(3), 189, subd. (e)(3).) The trial court found beyond a reasonable doubt that he was such a participant, and thus the court appropriately denied relief.

3.    *Sufficiency of the Evidence to Support Findings of Major Participation and Reckless Indifference to Human Life*

Anticipating our conclusion above, appellant challenges the sufficiency of the evidence to support the trial court's findings of reckless indifference and major participation. The contention lacks merit.

---

[8]    The People dedicated five pages of their response to the petition to address the various factors and circumstances under *Banks* and *Clark*.

14

In *Banks*, *supra*, 61 Cal.4th 788, the Supreme Court examined the conduct for which an accomplice who lacks the intent to kill may be liable under principles of aiding and abetting felony murder. (*Id.* at pp. 802–803.) The Court set forth various considerations to determine the ultimate question of whether the defendant's conduct amounted to major participation "'in criminal activities known to carry a grave risk of death.'" (*Id.* at p. 803.) Those circumstances, posed as questions, include: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Ibid.*, fn. omitted.)

The Court again addressed aiding and abetting principles under felony murder in *Clark*, *supra*, 63 Cal.4th 522, to consider circumstances in which an aider and abettor harbors the requisite mental state (reckless indifference to human life) for felony murder liability. (*Id.* at p. 615.) Those circumstances often overlap with those set forth in *Banks* for major participation, and include the following: the number of firearms used during the predicate crime (here, robbery), the defendant's knowledge they would be used, and whether the defendant used a firearm; the defendant's presence during the robbery

15

and opportunity to restrain the crime or aid the victim; the duration of the robbery; the defendant's knowledge that one of his cohorts would likely kill; and the defendant's efforts, if any, to minimize the possibility of violence during the robbery. (*Id.* at pp. 615, 618–623.) "'No one of these considerations is necessary, nor is any one of them necessarily sufficient.' [Citation.]" (*Id.* at p. 618.)

We review the trial court's findings of major participation and reckless indifference for substantial evidence. (*Banks*, *supra*, 61 Cal.4th at pp. 798, 804; *Clements*, *supra*, 60 Cal.App.5th at p. 618.)

Here, substantial evidence supports the trial court's finding that appellant was a major participant in the robbery who acted with reckless indifference to human life. Appellant admitted: (1) he and Thomas had planned the armed robbery to obtain money for drugs; (2) before the robbery and murder, he possessed the gun used by Lawson (from which it may be inferred he gave the gun to Lawson to be used in the robbery); (3) after the robbery and murder the gun was returned to him; (4) appellant was inside the store or in the store doorway at the time of the shooting (from which it may be inferred he participated as a lookout); and (5) afterwards he received more than $50 from the proceeds. Regardless whether appellant was aware of his codefendants' propensity for violence, this evidence, along with the fact that appellant made no effort to minimize the possibility of violence during the robbery and murder, and made no effort to render aid, amply support the trial court's finding that appellant was a major participant to the robbery who acted with reckless indifference to human life.

(Compare *In re Loza* (2017) 10 Cal.App.5th 38, 49–55; *People v. Medina* (2016) 245 Cal.App.4th 778, 791–793.)

## DISPOSITION

The order denying appellant's petition for resentencing is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                      WILLHITE, Acting P. J.

We concur:


COLLINS, J.


CURREY, J.